IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AJZN, INC. A California corporation, formerly known as AERIELLE, INC., <br><br> Plaintiff, <br><br> v. <br><br> DONALD YU, AERIELLE, LLC, GREAT AMERICAN LIFE INSURANCE COMPANY, AERIELLE TECHNOLOGIES, INC., AERIELLE IP HOLDINGS, LLC, and AERIELLE ACQUISITIONS CORPORATION, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 13-149 GMS |

## I.   INTRODUCTION

The plaintiff, AJZN, Inc. ("AJZN") filed this lawsuit against Defendants Donald Yu, Aerielle, LLC, Great American Life Insurance Company, Aerielle Technologies, Inc., Aerielle Acquisitions Corporation, and Aerielle IP Holdings, LLC (collectively, "the defendants") on June 28, 2012. (D.I. 1.) The Complaint raises a number of claims relating to corporate transactions.

The defendants filed a motion to dismiss for failure to state a claim on April 15, 2013. (D.I. 38.) For the reasons stated below, the defendants' motion is granted as to Counts 1, 2, 3, 4, 5, 7, and 10 (in part), and denied as to Counts 6, 8, 9, 10 (in part), and 11.

## II.   BACKGROUND

AJZN, formerly known as Aerielle, Inc., is incorporated and has its principal place of business in Santa Clara County, California. (D.I. 36 at ¶ 2.) Defendant Donald Yu ("Yu") is an

individual who, upon belief, resides in Santa Clara County, California. (*Id*. at ¶ 3.) Defendant Aerielle, LLC ("Aerielle") is a Delaware-organized limited liability company with its principal place of business in California. (*Id*. at ¶ 4.) Defendant Great American Life Insurance Company ("GALIC") is incorporated and has its principal place of business in Ohio. (*Id*. at ¶ 5.) It is believed to be the sole member of Aerielle. (*Id*. at ¶¶ 4-5.) Defendant Aerielle Technologies, Inc. ("ATI") is incorporated in California, with its principal place of business there. (*Id*. at ¶ 6.) Defendant Aerielle Acquisition Corporation ("AAC") is a Delaware corporation, whose principal place of business is also in California, and upon belief, was formed and controlled by Yu. (*Id*. at ¶ 7.) Defendant Aerielle IP Holdings, LLC ("AIPH") is an Ohio-organized limited liability company and GALIC was the sole member of AIPH. (*Id*. at ¶ 8.)

AJZN was founded in 2004 by Arthur Cohen, who held numerous patents, trademarks and a copyright primarily in wireless audio and internet radio technology (collectively, the "Intellectual Property"). (*Id*. at ¶ 12.) As the sole shareholder of ATI from 2007 through 2009, AJZN assigned almost all of its Intellectual Property to ATI. (*Id*.) On September 17, 2007, AJZN entered into a Senior Secured Note Purchase Agreement (the "Note Purchase Agreement") with GALIC, whereby AJZN, as the borrower, incurred debt obligations to GALIC, while GALIC procured a security interest in substantially all of AJZN's assets. (*Id*. at ¶ 13.) In January 2009, AJZN received approximately $1.5 million for settlement of a patent lawsuit. (*Id*. at ¶ 14.) GALIC demanded the settlement proceeds be paid directly to it in accordance with the Note Purchase Agreement. (*Id*.) In lieu of immediate payment from the settlement funds, GALIC insisted AJZN appoint Yu as CEO of AJZN. (*Id*.) AJZN obliged and Yu became its CEO in February 2009. (*Id*.)

2

GALIC formed Aerielle in February 2009, with Yu acting as CEO. (*Id.* at ¶ 15.) On April 10, 2009, AJZN entered into an Asset Purchase Agreement with Aerielle in which AJZN sold substantially all of its assets and its 100% interest ownership in ATI to Aerielle in exchange for the assumption of certain debt and a warrant (the "Warrant"). (*Id.* at ¶ 16.) The Warrant gave AJZN the option, after April 10, 2010, to acquire up to 12,000 membership units of Aerielle. (*Id.*) The Warrant was to further compensate AJZN for its assets, which were purportedly worth more than the amount of debt assumed by Aerielle. (*Id.*) As part of this transaction, AJZN entered into other agreements, including a Confidential Mutual Release and a Settlement Agreement (the "Release"). (*Id.* at ¶ 17.)

In May 2010, AJZN attempted to exercise its rights under the Warrant by notifying the Aerielle board. (*Id.* at ¶ 20.) It was informed the necessary paperwork would be provided. (*Id.*) On June 21, 2010, Cohen followed up with a written request for the necessary paperwork. (*Id.* at ¶ 21.) Aerielle again failed to respond. (*Id.*) In October 2010, GALIC representatives met with Cohen to discuss AJZN's interest in Aerielle and requested to terminate the Warrant in exchange for an Earnout Agreement, which would pay AJZN a percentage of gross revenues, generated by ATI, if ATI merged with Aerielle. (*Id.* at ¶¶ 22-23.) AJZN declined the offer. (*Id.* at ¶ 24.)

Effective December 31, 2010, Aerielle transferred substantially all of its assets, including those acquired from AJZN, and its shares of ATI to AAC, which was owned and controlled by Yu. (*Id.* at ¶ 25.) As part of the transfer, AJZN received an earnout (the "Earnout") similar to the Earnout Agreement previously proposed and rejected. (*Id.*) The Earnout was contoured as a percentage interest in a "Revenue Participation Agreement," issued by AAC to Aerielle and capped the maximum payment at $1.5 million. (*Id.*) Aerielle sent AJZN notice of the Earnout; but AJZN never received a copy of the Revenue Participation Agreement. (*Id.*) AJZN continued

3

voicing its objections to the Earnout, which defendants did not acknowledge. (*Id.*) The Earnout ultimately failed to generate any revenue for AJZN. (*Id.* at ¶ 26.)

## III. DISCUSSION

### Count 1 - Violation of Securities Exchange Act of 1934 and Rule 10b-5 against Yu; Aerielle, LLC; and GALIC

FED. R. CIV. P. 9(b) requires circumstances of fraud be described with particularity to provide notice to a defendant of the specific misconduct charged. *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Allegations of "date, place or time" to fulfill the particularity requirement of Rule 9(b) are not required. *Id.* "Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* When substantive information lies within another party's control, a plaintiff may plead based on information and belief, "but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Brinkmeier v. BIC Corp.*, 733 F. Supp. 2d 552, 559 (D. Del. 2010). In satisfying Rule 9(b), in conjunction with Rule 8(a)(2),[2] "the requirement of particularity . . . does not entail an exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated . . . the alleged fraud and reasonably believes that a wrong has occurred." *Temple v. Haft*, F.R.D. 49, 53 (D. Del. 1976).

The heightened pleading requirement of Section 78u-4(b) of the Private Securities Litigation Reform Act (the "PSLRA"), however, imposes an additional layer of factual particularity superseding the standard of Rule 9(b). *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215-18 (3d Cir. 2002). Section 78u-4(b)(1) requires securities fraud be pled to (1) specify each statement alleged as misleading; (2) provide the reason why the statement is

---

[2] Rule 8(a)(2) provides "a pleading shall contain . . . a short and plain statement of the claim." *Gissen v. Colorado Interstate Corp.*, 62 F.R.D. 151, 154 (D. Del. 1974).

4

misleading; and (3) if an allegation regarding the statement or omission is made on information and belief, state with particularity all facts on which the belief is formed. 15 U.S.C. § 78u-4(b)(1). According to Section 78u-4(b)(2), a plaintiff must "state with particularity facts giving rise to a strong inference" of the defendant's scienter. 15 U.S.C. § 78u-4(b)(2). Allegations of securities fraud must therefore resemble "the first paragraph of any newspaper story" and set out the "who, what, when, where and how" of the events at issue. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997).

Section 10(b) of the Securities Exchange Act of 1934 provides it is unlawful to:

> use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so based registered, or any securities-based swap agreement . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Additionally, Rule 10b-5 states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. In order to state a claim under § 10(b) and Rule 10b-5, a plaintiff must establish: "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance . . . ; (5) economic loss;

and (6) 'loss causation,' i.e., a causal connection between the material representation and the loss." *City of Roseville Employees' Retirement Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 386 (D. Del. 2010) (quoting *Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).

Under the heightened pleading standard of the PSLRA, claims under § 10(b) and Rule 10b-5 must initially "specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity." *Id.* at 386 (quoting *Inst'l Investors Group v. Avaya, Inc.*, 564 F.3d 242, 252-53 (3d Cir. 2009)). Therefore, a plaintiff "*must identify* either false statements or statements rendered misleading by omission." *Van Roy v. Sakhr Software Co.*, C.A. No. 11-863-LPS, 2014 WL 3367275, at *6 (D. Del. July 8, 2014) (emphasis added). Only material misstatements and omitted facts that a reasonable investor would find important in making an investment decision are actionable. *Id.* (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)); *see also In re Burlington*, 114 F.3d at 1425.

The complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with" scienter. *Horizon Lines*, 713 F. Supp. 2d at 386 (quoting 15 U.S.C. § 78u-4(b)(2)). Scienter is a "mental state embracing intent to deceive, manipulate, or defraud" which requires "a knowing or reckless state of mind." *Avaya*, 564 F.3d at 252 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12, (1976)). Recklessness means "an extreme departure from the standards of ordinary care presenting a danger of misleading buyers or sellers, when the defendant either knows about this danger or the danger is so obvious the defendant should have been aware of it." *OpenGate Capital Group, LLC v. Thermo Fisher Scientific, Inc.*, C.A. No. 13-1475-GMS, 2014 WL 3367675, at *6 (D. Del. July 8, 2014). The facts alleged are viewed collectively and not scrutinized in isolation as to whether a strong inference of scienter exists.

6

*Horizon Lines*, 713 F. Supp. 2d at 386 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, U.S. 308, 322 (2007)). This strong inference may be established "either by alleging facts to show that defendants had both motive and opportunity to commit fraud, or by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Oran v. Stafford*, 226 F.3d 275, 288-89 (3d Cir. 2000). "Cobbling together a litany of inadequate allegations does not render those allegations particularized in accordance with . . . the PSLRA." *Horizon Lines*, 713 F. Supp. 2d at 386 (quoting *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155 (3d Cir. 2004)).

Reliance is adequately pled by "alleging . . . [a plaintiff] was aware of a company's statement and engaged in a relevant transaction . . . based on that specific misrepresentation." *OpenGate*, 2014 WL, 3367675, at \*7 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2185 (2011)). Courts evaluate the facts surrounding a plaintiff's decision and "a sophisticated purchaser may reasonably rely on the honesty of those with whom he deals in the absence of knowledge that his trust is misplaced." *Id.* (citing *Halliburton*, 131 S. Ct. at 2186; *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 883 (3d Cir. 2000)).

Under § 20(a) of the Securities Exchange Act, liability may be found when a defendant exercised control over a "controlled person" who violated § 10(b). *Snowstorm Acquisition Corp. v. Tecumseh Products Co.*, 739 F. Supp. 2d 686, 707 (D. Del. 2010) (citing *Avaya*, 564 F.3d at 252). Section 20(a) states:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

7

15 U.S.C. § 78t(a). Control means "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Snowstorm Acquisition Corp.*, 739 F. Supp. 2d at 707 (quoting 17 C.F.R. § 240.12b-2). Therefore, a plaintiff must prove "not only that one person controlled another person, but also that the 'controlled person' is liable under the Act." *Id.* (quoting *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004)). Under § 20(a), "secondary liability cannot be found . . . unless it can be shown that the defendant was a culpable participant in the fraud." *Id.* (quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 n.16 (3d Cir. 2006)). Additionally, the PSLRA requires that a § 20(a) claim state with particularity the circumstances of the defendant's control of the primary violator and the defendant's culpability as a controlling person. *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002).

AJZN alleges at the time of its purchase of the Warrant, Aerielle, Yu, and GALIC, knew and concealed that the Warrant was worthless and would never be honored, and it was induced by defendants to transfer its assets to Aerielle, who then transferred the assets to other entities owned and controlled by Yu and GALIC, eliminating AJZN's interest in Aerielle. (*Id.* at ¶¶ 18, 29-31.) Damages resulted from the transfer of AJZN's interest in ATI to Aerielle for the worthless Warrant. (*Id.* at ¶¶ 30, 32.) AJZN relies heavily on *The Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588 (2001), where the Supreme Court affirmed that the defendant's material misrepresentation occurred when it secretly intended to never honor the plaintiff's option to purchase stock. (D.I. 40 at 10-11) (citing 532 U.S. at 590, 596-97); *see also Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 60 (D. Del. 2002) ("[T]he making of a promise with no intent to fulfill that promise, coupled with a later refusal to fulfill that promise, constitutes a misstatement.") (*Id.* at 8.)

8

AJZN argues scienter is evidenced by Yu's use of Aerielle funds to pay for personal expenses, the issuance of large payments from Aerielle to Yu and his daughter, the payment of third-party bills, and the refusal to honor AJZN's request to exercise its rights under the Warrant and obtain its interest in Aerielle. (*Id.* at 11-13.)

Defendants maintain dismissal is warranted in absence of any alleged specific statements or misrepresentations about the Warrant. (D.I. 38 at 13.) Regarding scienter, they note the facts purportedly supporting a secret intention not to honor the Warrant when issued occurred *after* the Warrant was signed by both parties. (D.I. 41 at 5) (citing D.I. 40 at 9-10). Defendants further argue *Wharf* is not applicable because that litigation began before the 1995 effective date of the PSLRA, and did not apply the heightened pleading requirements. (*Id.*) (citing *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1219 (10th Cir. 2000)). They assert AJZN contorts a breach of contract claim into a securities fraud claim, and fails to address certain necessary elements. (*Id.* at 13-14.)

AJZN does not assert a securities fraud claim because it fails to specifically plead that it was induced to enter into the Asset Purchase Agreement with Aerielle based on the defendants' misrepresentation of a statement made or omission of a material fact. AJZN fails to identify any statement by the defendants. AJZN's reliance on *Wharf* and *Tracinda* is misplaced. In *Wharf*, the court's analysis did not apply the heightened provisions of the PSLRA. In *Tracinda,* the plaintiff adequately pled the first element of a § 10(b) claim because it identified a specific statement by the defendant before execution of the agreement, and a later statement which supported the misleading nature of the first. 197 F. Supp. 2d at 49, 59-60. Here, since AJZN failed to allege with any specificity a misrepresentation or an omission of a material fact by the defendants, the first element is not satisfied.

9

By failing to meet the initial element, AJZN does not sufficiently allege the second element

of scienter. Under the PSLRA, "any private securities complaint alleging the defendant *made a*

*false or misleading statement* must . . . state with particularity facts giving rise to a strong inference

that the defendant acted with the required state of mind." *Avaya*, 564 F.3d at 253 (quoting *Tellabs,*

*Inc.*, 551 U.S. at 321). AJZN relies on the totality of the facts in the complaint to support an

inference of scienter. Absent identifying any material statement or misrepresentation by

defendants which was relied upon by AJZN in entering the Asset Purchase Agreement, there is no

scienter.

Because AJZN fails to adequately plead securities fraud under § 10(b) and Rule 10b-5, and

consequently, cannot allege a violation of § 20(a), Count 1 is dismissed.

## Count 2 - Violation of California Corporations Code §§ 25401 and 25501 against Yu, Aerielle, and GALIC

Section 25401 of the California Corporations Code provides:

> It is unlawful for any person, in connection with the offer, sale, or purchase of a security, directly or indirectly, to do any of the following:
>
> (a) Employ a devise, scheme, or artifice to defraud.
>
> (b) Make an untrue statement of material fact or omit to state a material fact necessary to make the statement made, in light of the circumstances under which they were made, not misleading.
>
> (c) Engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

CAL. CORP. CODE § 25401. Further, § 25501 states:

> Any person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him, who may sue either for rescission or for damages (if the plaintiff or the defendant, as the case may be, no longer owns the security), unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care

10

> and did not know (or if he had exercised reasonable care would not have known) of the untruth or omission . . . .

CAL. CORP. CODE § 25501. Since these claims involve fraud, the circumstances must be pled with particularity. *Jackson v. Fischer,* 931 F. Supp. 2d 1049, 1058 (N.D. Cal. 2013) (referencing FED. R. CIV. P. 9(b)). Falsity must be pled with specificity, including the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Id.* (quoting *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir.)). Liability under § 25401 attaches when a buyer or a seller of a security makes "an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *Id.* (quoting CAL. CORP. CODE § 25401). Section 25401 does not apply to cases of "simple nondisclosure." *Id.* (citing *Lynch v. Cook,* 196 Cal.Rptr. 544, 554 (Cal. Ct. App. 1983)). Failure to allege facts of a defendant's material misstatement or omission in connection with the sale of securities warrants dismissal. *See Jackson,* 931 F. Supp. 2d at 1065 (dismissal of securities fraud claims under §§ 25401 and 25501 where the same allegations were used for §10(b) and Rule 10b-5 claims, which failed to specify that defendants made any false statement or omission in the sale of the securities).

When a violation of § 25401 is adequately plead, liability attaches under § 25501 if privity is established and demonstrates "liability is limited to the actual or literal seller or purchaser" of the security. *Rich v. Shrader,* No. 09-CV-0652, 2010 WL 3717373, at \*22 (S.D. Cal. Sept. 17, 2010); *see also In re Diasonics Sec. Litig.,* 599 F. Supp. 447, 548-49 (C.D. Cal. 1984) (noting a blanket allegation does not satisfy strict privity requirement to each defendant); *see also SEC v. Seaboard Corp.,* 677 F.2d 1289, 1296 (9th Cir. 1982) (dismissed state securities fraud claim because liability can only be limited to the "actual sellers" of the security).

11

Similar to the allegations in Count 1, Count 2 relates to the sale of the Warrant, and asserts that §§ 25401 and 25501 were violated by offering or selling a security through written and oral communications that included untrue statements of material fact or omitted material facts. (D.I. at ¶ 35.) Since defendants did not intend to allow the Warrant to be exercised and omitted and misrepresented their intention, AJZN maintains their conduct was a material element for inducing it to acquire the Warrant. (*Id.* at ¶¶ 18, 36.) AJZN seeks the difference between the equity value of the assets and shares of ATI transferred to Aerielle, and the value of the Warrant and interest from April 10, 2009 until trial. (*Id.* at ¶ 40.)

Both sides essentially rely on the same arguments as with Count 1. The parties, however, are incorrect that the heightened standards of the PSLRA apply to state securities fraud claims. *See Mack Univ. LLC v. Halstead*, No. CV 07-0393, 2007 WL 4458615, at *5 (C.D. Cal. Nov. 14, 2007) ("Although the PSLRA does not apply to state law claims, all fraud claims must be pled with particularity under Federal Rule of Civil Procedure 9(b)"). Despite AJZN's argument that California's statutes are virtually identical to Rule 10b-5 of the Securities Exchange Act of 1934 (citing *Tse v. Ventana Med. Sys., Inc.*, No. C.A. 97-37-SLR, 1998 WL 743668, at *11 (D. Del. Sept. 23, 1998)), the Third Circuit has held otherwise. *Tse v. Ventana Med. Sys., Inc.*, 297 F.3d 210, 224 (3d Cir. 2002) ("[W]e think that the District Court was incorrect in its conclusion that § 25401 involves the same elements as a Rule 10b-5 claim . . . .")

Nevertheless, for its state securities fraud claim, AJZN failed to adequately plead under the lesser standard of Rule 9(b). Its allegations merely recite the elements of §§ 25401 and 25501. *See Wallack v. Idexx Labs., Inc.*, No. 11-CV-2996, 2013 WL 5206190, at *11 (S.D. Cal. Sept. 12, 2013) (plaintiff's restatements of the elements of a claim for state securities fraud without any specific factual allegations insufficiently provided the required particularity mandated by Rule

12

9(b)). AJZN failed to allege any facts showing defendants made any material misstatement or omission in the connection with the sale of the Warrant. Thus, its claims under §§ 25401 and 25501 are dismissed.

Assuming that, AJZN adequately pled a claim under § 25401, liability would not attach to Yu or GALIC under § 25501 because only Aerielle was the actual or literal purchaser of the assets. *See Rich*, 2010 WL 3717373, at *22 ("liability is limited to the actual or literal seller or purchaser" of the security). Though unclear from the complaint, AJZN may be trying to assert a claim against GALIC through § 25504, which imposes control person liability on those who assist others in violations under the California Securities Act. (*See* D.I. 36 at ¶ 39.); *see Jackson*, 931 F. Supp. 2d at 1064. Since AJZN does not sufficiently assert a violation of §§ 25401 and 25501, a claim under § 25504 is not alleged. *Jackson*, 931 F. Supp. 2d at 1064 (sufficient contentions for violations of §§ 25401 and 25501 are a predicate for liability under § 25504).

In the absence of adequately pled violations of California securities fraud, Count 2 is dismissed.

## Count 3 - Breach of Warrant against Aerielle

FED. R. CIV. P. 12(b)(6), requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Weyerhaeuser Co. v. Domtar Corp.*, C.A. No. 14-024-SLR, 2014 WL 3767869, at *2 (D. Del. July 30, 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *Id.* (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

13

Under Delaware law, warrants "are contractual entitlements" and "[t]he exclusive rights

and remedies of warrantholders must appear in the contractual provisions of the Warrants." *Aspen*

*Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1263 (Del. 2004). Therefore, "in

order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff

must demonstrate: first, the existence of the contract, whether express or implied; second, the

breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."

*VLIW Tech. LLC, v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. Ch. 2003). "Clear and

unambiguous language found in the contract is to be given its ordinary and usual meaning."

*Templeton v. EmCare, Inc.*, 868 F. Supp. 2d 333, 339 (D. Del. 2012) (quoting *Iacono v. Barici*,

C.A. No. 02-021, 2006 WL 3844208, at *2 (Del. Super. Dec. 29, 2006)). Ambiguity of terms

exists "when the provisions in controversy are reasonably or fairly susceptible of different

interpretations." *VLIW Tech. LLC*, 840 A.2d at 615. However, "if one of two proffered meanings

is unreasonable, there is no ambiguity." *Uni-Marts, LLC, v. NRC Realty Advisors, LLC*, 426 B.R.

77, 83 (D. Del. 2010). Further, "under Delaware law, a condition precedent is an 'event that,

although not certain to occur, must occur before performance under a contract becomes due.'" *Id.*

(quoting *Munro v. Beazer Home Corp.*, C.A. No. 03-081, 2011 WL 2651910, *4 (Del. C.P. June

23, 2011)). In deciding a motion to dismiss, the court cannot choose between two differing

reasonable interpretations of ambiguous provisions, and dismissal, pursuant to Rule 12(b)(6), is

appropriate only if the defendant's interpretation of the terms is the sole reasonable interpretation.

*VLIW Tech. LLC*, 840 A.2d at 615.

Delaware law provides no cause of action for damages based on a promise or contract

"after the expiration of 3 years from the accruing of the cause of such action." *Smith v. Mattia*,

C.A. No. 4498, 2010 WL 412030, at *3 (Del. Ch. Feb. 1, 2010) (quoting 10 DEL. C. § 8106). In

14

applying the three-year limitations to a breach of contract claim, the cause of action accrues "at the time the contract is broken, not at the time when actual damage results or is ascertained." *Id.* (quoting *Worrel v. Farmer's Bank of Del.*, 430 A. 2d 469, 470 (Del. 1981)).

AJZN contends Aerielle breached the Warrant by preventing the exercise of its contractual rights. (D.I. 36 at ¶¶ 42-43.) In May 2010, when AJZN attempted to exercise its rights, Aerielle's representatives promised to provide the necessary paperwork for honoring its request. (*Id.* at ¶ 43.) After Aerielle failed to do so, AJZN reiterated its request, to which Aerielle never responded. (*Id.*) AJZN argues Aerielle ignored its requests thereby interfering with and preventing exercise of the Warrant. (*Id.* at ¶ 44.) The crux of AJZN's argument is because the Warrant did not state that surrender of a copy was sufficient, then the surrender of the original was required. (D.I. 40 at 3.)

Aerielle maintains AJZN never alleged that it properly exercised the Warrant to obligate issuance. (D.I. 38 at 8.) AJZN never alleged it properly followed the express guidelines and procedures of the Warrant when attempting to exercise its rights thereunder. (*Id.* at 9; *see* D.I. 36, Ex. A, ¶ 1.) In addition, Delaware's three-year statute of limitations nullifies AJZN's breach of the Warrant claim. (D.I. 41 at 3.) Aerielle submits any purported breach occurred on April 10, 2009 at the execution of the Asset Purchase Agreement, not in May 2010 when Aerielle attempted to exercise the Warrant. (*Id.*)[3]

The Warrant, in relevant part, provides:

> This certifies that for value received AERIELLE, INC., . . . is entitled, subject to the terms set forth below, at any time after April 10, 2010 . . . to purchase from Aerielle, LLC, . . . Twelve Thousand (12,000) Units . . . upon surrender hereof, at the principal office of . . . . with a duly executed subscription form in the form attached hereto as Exhibit A (the "Subscription Form") and simultaneous payment

---

[3] AJZN initiated this matter on June 28, 2012. (D.I. 1.)

therefor in lawful money of the United States or otherwise as hereinafter provided, at the price of one cent ($.01) per Unit . . . .

(D.I. 36; Ex. A) The provision to exercise the Warrant states:

> This Warrant may be exercised, in whole, but not in part, after the Vesting Date and during the specific period specified in the first paragraph hereof for the full number of Units called for hereby, by surrendering *it* at the principal office of the Company, which is 190 S. Whitman Road, Bldg. B, Mountain View, CA 94041, Attention: Chief Executive Officer with the Subscription Form duly executed, together with payment in an amount equal to (a) the number of Units called for on the face of this Warrant, as adjusted in accordance with the terms of this Warrant multiplied by the Purchase Price. . . .

(*Id.* Ex. A at ¶ 1.) These unambiguous terms clearly provide the specific procedure. Although the term "*it*" could arguably be ambiguous as either in reference to the original Warrant or a copy, AJZN does not raise any ambiguity argument and the court should not try to find one. *See Uni-Marts,* 426 B.R. at 83 ("[R]eviewing courts will not distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.") (quoting *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009)). AJZN's broad contention of surrendering a copy versus the original is not supported by any language of the Warrant. (*See* D.I. 36; Ex. A.) AJZN only alleged it requested the "necessary paperwork" and not the original Warrant from Aerielle. It never described any efforts to follow the clear instruction of the Warrant: submit a copy of the Warrant, subscription form, and payment. Therefore, dismissal of Count 3 is appropriate.

**Count 4 - Promissory Fraud against Aerielle and GALIC; and**

**Count 5 - Recission of the Release - Fraud in the Inducement or Failure of Consideration against Yu, Aerielle, and GALIC**

The elements of common law fraud include a false representation of material fact; the knowledge or belief that the representation was false, or made with reckless indifference to the truth; an intent to induce another party to act or refrain from acting; the parties' action or inaction

16

taken in justifiable reliance on the representation; and damage to the other party as a result of the representation. *Red Mountain Holdings, Ltd. v. Stout P'ship*, C.A. No. 00-190, 2001 WL 34368400, at *3 (D. Del. March 30, 2001) (citing *Browne v. Robb*, 583 A.2d 949, 955 (Del. 1990)). Common law fraud claims fall under the heightened standard of Rule 9(b). *Brinkmeier v. Graco Children's Products, Inc.*, 767 F. Supp. 2d 488, 492 (D. Del. 2011). For promissory fraud claims, "courts, however, will convert an unfulfilled promise of future performance into a fraud claim if particularized facts are alleged that collectively allow the inference that, at the time the promise was made, the speaker had no intention of performing." *Grunstein v. Silva*, C.A. No. 3932, 2009 WL 4698541, at *13 (Del. Ch. Dec. 8, 2009). Unlike a traditional fraud claim, which allows intent to be pled generally, promissory fraud relies on the speaker's state of mind at the time the statement is made, so "a general averment of a culpable state of mind is insufficient," and a plaintiff must "plead specific facts that lead to a reasonable inference that the promissor had no intention of performing at the time the promise was made." *Id.* (citation omitted).

A claim for fraudulent inducement requires the same five elements for common law fraud. *Market Am., Inc. v. Google, Inc.*, C.A. No. 09-494-GMS, 2010 WL 3156044, at *4 (D. Del. Aug. 9, 2010). Like a promissory fraud claim, a plaintiff may not simply allege "boilerplate and conclusory allegations," without the requisite particularity. *Id.*

Under Delaware law, a contract may be rescinded where there is an "outright refusal of one party to a contract to perform the contract or its essentials," making the party's failure to "perform basic terms . . . unjustified." *Id.* at *7 (citing *Sheehan v. Hepburn*, 138 A.2d 810, 812 (Del. Ch. 1958)). Rescission is allowed where there is an absence of consideration, allowing the court to return the parties to "the positions they held prior" to entering the contract. *Id.*

Mere evidence of "a party's failure to keep a promise does not prove the promise was false when made." *Id.* (quoting *Berdel, Inc. v. Berman Real Estate Mgmt., Inc.*, 1997 WL 793088, at *8 (Del. Ch. Dec. 15, 1997)). A plaintiff cannot "bootstrap" a breach of contract claim into a fraud claim by simply alleging a defendant never intended to perform its obligations. *Narrowstep, Inc. v. Onstream Media Corp.*, C.A. No. 5114, 2010 WL 5422405, at *15 (Del. Ch. Dec. 22, 2010) (citing *Iotex Commc'ns, Inc. v. Defries*, C.A. No. 15817, 1998 WL 914265, at *4 (Del Ch. Dec. 21, 1998)). Nor is fraud sufficiently alleged simply by adding the term "fraudulently induced" or contending the defendant never intended to comply with the agreement at the time of execution. *Id.* To survive a motion to dismiss, a plaintiff must identify particular false or misleading statements made by the defendant. *Red Mountain Holdings*, 2001 WL 34368400, at *4.

Under Count 4, AJZN alleges Aerielle, under the direction of Yu, and the control of GALIC, improperly induced AJZN to enter into the Asset Purchase Agreement and exchange its shares of ATI for the Warrant. (D.I. 36 at ¶¶ 48-50.) AJZN avers these parties never intended to honor the Agreement and allow it to exercise the Warrant rights. (*Id.* at ¶ 48). Because of defendants' conduct, AJZN seeks exemplary or punitive damages. (*Id.* at ¶ 55.)

For Count 5, AJZN essentially incorporates the same facts and arguments, but seeks rescission of the Release based on defendants' fraud and lack of consideration in the Asset Purchase Agreement. (*Id.* at ¶¶ 59-60; *see supra* pg. 3.) Since the Release was executed in connection with that Agreement, with the Warrant as consideration, AJZN contends the Release should be rescinded because of defendants' failure to offer "good and valuable" consideration.

(*Id.* at ¶ 60.) AJZN also notes the Release must be rescinded before defendants may be liable for fraud.[4]

For both fraud claims, AJZN fails to identify any false or misleading statements by Aerielle which induced AJZN to enter the Asset Purchase Agreement or demonstrate that Aerielle never intended to meet its obligations thereunder. *See Red Mountain Holdings*, 2001 WL 34368400, at *4 (dismissal warranted where allegations of fraud only related to the proposal and execution of a contractual agreement, without identifying any particular false or misleading statements by the defendants). Since AJZN failed to plead with the specificity required by Rule 9(b), Counts 4 and 5 is dismissed.

## Count 6 - Breach of Fiduciary Duty against Yu

CALIFORNIA CIVIL CODE § 3294 provides:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.
>
> "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.
>
> "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.
>
> "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact unknown to the defendant with the intention on the part of the defendant of thereby depriving a person or legal rights or otherwise causing injury.

---

[4] Under the terms of the Release, AJZN released Aerielle, Yu, GALIC and other affiliated people and entities from liability. (*Id.* at ¶ 61.)

CALIFORNIA CIVIL CODE § 3294 (a); (c)(1-3). "When a motion to dismiss relies upon affirmative defenses, such as a waiver and release, the Court may dismiss a claim if the plaintiff includes in its pleadings facts that incontrovertibly constitute an affirmative defense to a claim." *Canadian Commercial Workers Indus. Pension Plan v. Alden*, No. C.A. 1184-N, 2006 WL 456786, at *3 (Del. Ch. Feb. 22, 2006). General releases of all claims, known and unknown, are enforceable under California law. *Id.* at *5 (citing *Winet v. Price*, 4 Cal. App. 4th 1159, 1173 (Cal. Ct. App. 1992)). Pleading the language of § 3294 "is not objectionable when sufficient facts are alleged to support the allegation." *Robinson v. Bank of America, N.A.,* No. CV F 10-2135, 2010 WL 5114738, at *12 (E.D. Cal. Dec. 9, 2010) (quoting *Perkins v. Superior Court*, 117 Cal. App. 3d, 1, 6-7 (1981)); *compare with Brousseau v. Jarrett*, 73 Cal. App. 3d 864, 872 (1977) ("conclusory characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud, or malice, express or implied' within the meaning of Section 3294").

AJZN alleges Yu, in his capacity as CEO of AJZN, breached fiduciary duties under California law, by authorizing large payments to himself and his daughter from Aerielle for services previously reimbursed at agreed-upon rates; by issuing himself a 50% raise in salary, while other employees were subject to salary reductions; and by causing Aerielle to pay significant bills for shipping costs incurred by a third-party entity (owned by Yu's friend), without any supporting documentation. (D.I. 36 at ¶¶ 19, 63-65.) AJZN maintains the Release was limited to Yu as CEO of Aerielle, and did not release any claims against him as CEO of AJZN. (D.I. 40 at 18.)

Yu argues the Release insulates all claims against the officers of Aerielle "in any way relating to . . . the Purchase Agreement." (D.I. 41 at 8; D.I. 38, Ex. A at ¶ 1.) Because the complaint

relates to the Purchase Agreement and the Warrant was exchanged for the Purchase Agreement, Yu maintains the allegations against him are subject to the Purchase Agreement. (*Id.* at 9.) He asserts if both parties intended for the Release not to cover claims against officers in relation to the Purchase Agreement, then appropriate language would have been included; thus AJZN released its breach of fiduciary duty claim. (*Id.*)

AJZN adequately pled a claim under CALIFORNIA CIVIL CODE § 3294, regarding Yu's conduct. However, whether the Release bars such a claim must be addressed. The Release, in pertinent part, states:

> The Lender Parties, jointly and severally, including their respective officers, directors, employees, agents, affiliated companies and attorneys: (i) release and forever discharge the Aerielle Parties, and each of their respective past and present members, officers, directors, employees, agents, creditors, affiliated companies and attorneys, from the following: any and all actions, causes of action, suits, debts, accounts, obligations, defenses, . . . of any kind or character whatsoever, known or unknown, . . . in contract or in tort, . . . that the Lender Parties had, have, may have or may in the future have against any one or more of the Aerielle Parties arising out of, for or by reason of . . . the Note Purchase Agreement . . . .

(D.I. 38, Ex. A at ¶ 1.) The parties agree that a § 3294 claim is only feasible if Yu owed a fiduciary duty to AJZN; they disagree about the application of the Release. Yu's argument is misplaced. The clause following the general provisions of the Release states:

> Notwithstanding the foregoing, nothing contained herein shall release . . . *any* Aerielle Party or *any* Lender Party from intentional fraud arising out of, or resulting from, or in any way related to the Note Purchase Agreement . . . .

(*Id.*) (emphasis added). Since Yu, as CEO owed a fiduciary duty to AJZN (the "Lender Party") and fraud is a core element of a § 3294 claim, the Release does not bar such a claim against Yu. Count 6 should not be dismissed.

**Count 7 - Civil Conspiracy Against GALIC**

Under Delaware law, civil conspiracy requires "(1) [a] confederation or combination of two or more persons; (2) [a]n unlawful act done in furtherance of the conspiracy; and (3) [a]ctual damage." *Am. Gen. Life Ins. v. Goldstein*, 741 F. Supp. 2d 604, 614 (D. Del. 2010) (quoting *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987)). Civil conspiracy is not an independent cause of action, but requires an underlying wrong, by each defendant individually which would be actionable absent the conspiracy. *Digene Corp. v. Ventana Med. Sys., Inc.*, 476 F. Supp. 2d 444, 446 (D. Del. 2007); *Smiley v. Daimler Chrysler*, 538 F. Supp. 2d 711, 718-19 (D. Del. 2008) (if the civil conspiracy claim does not adequately allege a specific wrong or underlying tort by each individual defendant, the claim fails).

AJZN attaches the civil conspiracy claim to the breach of fiduciary duty claim against Yu, and fraud claims against all defendants. (D.I. 40 at 18.) Since the fraud claims of Counts 4 and 5 were not sufficiently pled, the only actionable underlying wrong is the breach of fiduciary duty claim against Yu under Count 6. Because this wrong can only be alleged against a single defendant, the first element of civil conspiracy is not satisfied and Count 7 is dismissed.

**Count 8 - Tortious Interference With Contractual Relations Against GALIC**

The elements of tortious interference with a contract are the existence of a contract, about which the defendant knew, and an intentional act that is a significant factor in causing the breach of such contract, without justification which causes injury. *Ethypharm S.A. France v. Abbott Labs.*, 598 F. Supp. 2d 611, 619 (D. Del. 2009) (citing *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987)). An "intentional" act or interference occurs when the actor "knows that the interference is certain or substantially certain to occur as a result of his action." *Grunstein*, 2009 WL 4698541, at *16 (quoting Restatement (Second) of Torts § 766). "Without justification" depends on a number of factors, including the nature of the conduct

22

at issue. *Id.* "The issue is not simply whether the actor is justified in causing the harm, but rather whether he is justified in causing it in the manner in which he does cause it." *Id.*

Delaware courts recognize that an "interference privilege" or an "affiliate privilege" where non-parties to the contract share a "commonality of economic interests" with one of the parties and act "in furtherance of their shared legitimate business interests." *Id.* (citing *Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578, 591 n.14 (Del. Ch. 1994)). To overcome the privilege, a plaintiff must plead the non-party "was not pursuing in good faith the legitimate profit seeking activities of the affiliated enterprises," or "was motivated by some malicious or other bad faith purpose to injure the plaintiff." *Id. James Cable, LLC v. Millenium Digital Media Sys., LLC*, found the pleadings failed to overcome the affiliate privilege because the allegations were conclusory by merely stating the defendants "acted solely to advance [their] economic interest . . ., and not for any legitimate purpose." C.A. No. 3637, 2009 WL 1638634, at *4 (Del. Ch. June 11, 2009). However, in *Travel Syndication Tech., LLC v. Fuzebox, LLC*, the court found the pleadings, demonstrating bad faith and intent to destroy the plaintiff's business, were sufficient to overcome the affiliate privilege. C.A. No. 11-553-RGA-SRF, 2012 WL 1931238, at *5 (D. Del. May 25, 2012); *see Global Recycling Solutions, LLC v. Greenstar N.J., LLC*, C.A. No. 09-976-LPS, 2011 WL 4501165, at *10 (D. Del. Sept. 28, 2011) (bad faith was sufficiently pled where facts showed the defendant's control of the company was not aimed at the shared profitability of the company and the affiliate, but rather designed to benefit it at the company's expense).

AJZN alleges GALIC, as the sole and controlling member of Aerielle, was aware of the Revenue Participation Agreement between Aerielle and AAC, and AJZN's 18.8% interest as a third-party beneficiary in the proceeds received by Aerielle under the Agreement. (D.I. 36 at ¶¶ 79, 81.) AJZN claims AAC generated enough net sales and proceeds to make the required

23

payments to Aerielle, but GALIC, without justification, instructed Yu, who controlled AAC, not to make payments to Aerielle, thereby denying any proceeds to AJZN and causing damages. (*Id.* at ¶¶ 82-86.) AJZN maintains the affiliate privilege is not applicable because its fraud claims against GALIC, Yu, and Aerielle are adequate, noting GALIC and Yu's control over defendants, which demonstrates their motive to defraud AJZN was done in bad faith and for personal gain, outside of any shared legitimate economic interest or any legitimate profit-seeking activities. (D.I. 40 at 19; *see* D.I. 36 at ¶ 85.)

GALIC contends affiliate privilege operates because AJZN alleges "mere labels and conclusions" of bad faith, absent specific facts, and fails to show GALIC acted contrary to shared economic interests or against the interests of AJZN. (D.I. 38 at 16-17; D.I. 41 at 10.)

The analysis begins with whether AJZN's pleadings are sufficient to overcome the affiliate privilege. They are. AJZN contends by instructing Yu to withhold payments from AAC to Aerielle (a subsidiary of GALIC), GALIC was not furthering a legitimate profit seeking activity, but obstructed AJZN from receiving payments for its interest in AAC under the Revenue Participation Agreement.

Moreover, AJZN pled GALIC's knowledge of the Revenue Participation Agreement, and its unjustified interference with the Agreement via its instructions to Yu to withhold payments from AAC to Aerielle, that prevented payment to AJZN of its contractual percentage. AJZN's claim for tortious interference with contractual relations against GALIC in Count 8 is adequately pled.

**Count 9 - Fraudulent Transfer Against Defendants Yu, GALIC, ATI, AAC, and AIPH**

Pertinent provisions of The Delaware Uniform Fraudulent Transfer Act ("DUFTA") include:

24

(1) "Affiliate" means:

(a) A person who directly or indirectly owns, controls or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than a person who holds the securities . . .

(b) A corporation, 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled or held with power to vote by the debtor or a person who directly or indirectly owns, controls or holds with power to vote 20 percent or more of the outstanding voting securities of the debtor, other than a person who holds the securities . . .

(c) A person whose business is operated by the debtor under a lease or other agreement or a person substantially all of whose assets are controlled by the debtor; or

(d) A person who operates the debtor's business under a lease or other agreement or controls substantially all of the debtor's assets.

(7) "Insider" includes:

(b) If the debtor is a corporation:

> (1) A director of the debtor;
> (2) An officer of the debtor;
>
> (3) A person in control of the debtor;
>
> (d) An affiliate or an insider of an affiliate as if the affiliate were the debtor.

(9) "Person" means an individual, partnership, corporation, association, organization . . . .

6 DEL. C. §§ 1301(1)(a)-(d); (7)(b),(d); (9).

For a fraudulent transfer claim, compliance with Rule 9(b) showing the defendant's "intent to defraud with specific supporting facts describing the circumstances of the transfer" is required.

*Quadrant Structured Prods. Co., Ltd. v. Vertin*, C.A. No. 6990, 2014 WL 5099428, at *31 (Del.

Ch. Oct. 1, 2014).

DUFTA §1304(a) in relevant part provides:

> [a] transfer made or obligation incurred by a debtor is fraudulent as to the creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) With actual intent to hinder, delay or defraud any creditor of the debtor . . . .

6 Del. C. § 1304(a)(1). Section 1304(b) states:

> [i]n determining actual intent under paragraph (a)(1) of this section, consideration may be given, among other factors, to whether:
>
> (1) The transfer or obligation was to an insider;
>
> (2) The debtor retained possession or control of the property transferred after the transfer;
>
> (3) The transfer or obligation was disclosed or concealed;
>
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) The transfer was of substantially all the debtor's assets;
>
> (6) The debtor absconded;
>
> (7) The debtor removed or concealed assets;
>
> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
> (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

> (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
> (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id.* § 1304(b).  Section 1305(a) provides:

> [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

*Id.* § 1305(a).  Section 1305(b) follows with:

> [a] transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

*Id.* § 1305(b).

Intent is a question of fact; under § 1304(a)(1), adequate facts which lead to the reasonable conclusion that the defendant acted with the requisite intent when making the transfer must be alleged. *Quadrant*, 2014 WL 5099428, at *33.  In determining intent, reference in a complaint to the list of factors in § 1304(b) is sufficient to raise a claim of fraudulent transfer.  *Id.* at *34. Sections 1305(a) and (b) may serve as further grounds for fraudulent transfer.  *Id.* at *30.

As to remedies, § 1307 states:

> (a) In an action for relief against a transfer or obligation under this chapter, a creditor . . . may obtain:
>
> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

6 DEL. C. § 1307(a)(1).

As a result of the collusive transactions, AJZN argues it has been a creditor of Aerielle since April 10, 2009. (D.I. 36 at ¶ 88.) AJZN maintains the transfers from Aerielle to AAC and then from AAC to AIPH, were done with the intent to hinder, delay, or defraud since they were made for less than reasonably equivalent value. (*Id.* at ¶¶ 89-92.) The transfer from Aerielle to AAC purportedly rendered Aerielle insolvent, and the subsequent transfer from AAC to AIPH caused AAC's insolvency. (*Id.* at ¶ 93.) The remedy sought is avoidance of the transfers to satisfy its claim against Aerielle. (D.I. 40 at 19; D.I. 36 at ¶ 94.)

Considering the factors listed in § 1304(b), AJZN alleges Aerielle transferred all of its assets (§ 1304(b)(5)) to an affiliate insider (§ 1304(b)(1)), AAC, for no value (§ 1304(b)(8)), which rendered Aerielle insolvent (§ 1304(b)(9)), and the assets were controlled by the Aerielle's insiders GALIC and Yu (§ 1304(b)(2)). For the second transfer, AJZN similarly alleges AAC transferred all of its assets (§ 1304(b)(5)) to AIPH, an affiliate insider (§ 1304(b)(1), for no value (§ 1304(b)(8)), rendering it insolvent (§ 1304(b)(9)). Under § 1304(b), AJZN sufficiently raises a claim for fraudulent transfer in Count 9.

**Count 10 - Unjust Enrichment Against All Defendants**

"Unjust enrichment is defined as 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Resnik v. Woertz*, 774 F. Supp. 2d 614, 633 (D. Del. 2011) (quoting *Tolliver v. Christiana Sch. Dist.*, 564 F. Supp. 2d 312, 315 (D. Del. 2008)). The elements are: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *Id.* (citing *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999)). Unjust enrichment is a quasi-contract theory applied in the absence of a formal contract. *Tolliver*, 564 F.

Supp. 2d at 315 (citing *In re Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.*, No. 94C-03-189, 1997 WL 529587, at \*17 (Del. Super. Ct. Jan. 29, 1997)).  If an express, enforceable contract that governs the parties' relationship exists, there is no unjust enrichment claim.  *Id.* (citing *Bakerman v. Sidney Frank Importing Co., Inc.*, No. C.A. 1844-N, 2006 WL 3927242, at \*18 (Del. Ch. Oct. 10, 2006)).  Such claim, however, may survive a motion to dismiss even where an express contract exists, when the contract does not exclusively pertain to the rights or obligations of the parties at issue.  *Id.* at 315-16; *see Fitzgerald v. Cantor*, C.A. No. 16297, 1998 WL 326686, at \*6-\*7 (Del. Ch. June 16, 1998) (motion to dismiss granted as to the defendants in which the asserted claims were governed exclusively by contract, but denied as to those defendants where the claims were not controlled by contract).

Although not wholly elaborated by AJZN, its underlying loss pertains to the inability to exercise the Warrant following the Asset Purchase Agreement with Aerielle.  (*See* D.I. 36 at ¶ 16.)  Since that Agreement clearly addresses the relationship between the parties and details AJZN's rights, AJZN is precluded from asserting an unjust enrichment claim against Aerielle.

The remaining defendants, Yu, GALIC, ATI, AAC, and AIPH, however, were not parties to any formal contract with AJZN; it sufficiently alleges an unjust enrichment claim against them.  Count 10 is granted in part and dismissed in part.

## Count 11 - Successor Liability Against AAC and AIPH

Delaware law on corporate successor liability provides:

> [W]hen one company sells or otherwise transfers all of its assets to another company, the buyer generally is not responsible for the seller's liabilities, including claims arising out of the seller's tortious conduct.  In limited situations, where avoidance of liability would be unjust, exceptions may apply to enable transfer of liability to the seller.  Exceptions include: (1) the buyer's assumption of liability; (2) defacto merger or consolidation; (3) mere continuation of the predecessor under a different name; or (4) fraud.

29

*Ross v. Desa Holdings Corp.*, C.A. No. 05C-05-013, 2008 WL 4899226, at \*4 (Del. Super. Ct. Sept. 30, 2008) (citing *Fehl v. S. W.C. Corp*, 433 F. Supp. 939, 945 (D. Del. 1977)). "[I]n some limited situations where an avoidance of liability would be unjust, a purported sale of assets for cash or other consideration may be found to transfer liabilities of the predecessor corporation." *Fehl*, 433 F. Supp. at 945; *see Corp. Prop. Assocs. 8, L.P. v. Amersig Graphics, Inc.*, C.A. No. 13241, 1994 WL 148269, at \*5 (Del. Ch. Mar. 31, 1994) (defendants may be held liable "even though [they] did not expressly assume these liabilities pursuant to an asset transfer.").

To create a *de facto* merger under Delaware law the following elements must exist: "(1) one corporation [transfers] all of its assets to another corporation; (2) payment is made in stock, issued by the transferee directly to the shareholders of the transferring corporation; and (3) in exchange for their stock in that corporation, the transferee . . . [assumes] all the debts and liabilities of the transferor." *Xperex Corp. v. Viasystems Technologies Corp., LLC*, C.A. No. 20582-NC, 2004 WL 3053649, at \*2 (Del. Ch. July 22, 2004). Delaware courts narrowly construe the continuation theory of successor liability, requiring the new company to be the same legal entity as the former. *Id.* The test "is not the continuation of the business operation; rather, it is the continuation of the corporate entity." *Id.* (citing *Fountain v. Chevrolet Co.*, 1988 WL 40019, at \*8-\*9 (Del. Super. Ct. Apr. 13, 1988)). Imposition of successor liability is only appropriate "where the new entity is so dominated and controlled by the old company that separate existence must be disregarded." *Id.* (citing *Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535, 542 (D. Del. 1988)).

AJZN alleges that following the transfer of the assets from Aerielle to AAC, AAC continued to conduct the same business as Aerielle, using the same assets, domain name and websites, and retaining most employees. (D.I. 36 at ¶ 101.) AJZN notes AAC held itself out to the public as a continuation of the business conducted by Aerielle. (*Id.*) AJZN further contends

AAC's transfer of the same assets to AIPH constituted a sham foreclosure, in which AIPH continued to conduct the same business and use the same domain name, websites, and employees as Aerielle and AAC. (*Id.* at ¶¶ 103-104.) AJZN maintains AAC and AIPH are mere continuations or successors of Aerielle through *de facto* mergers and are liable for Aerielle's debts owed to AJZN. (*Id.* at ¶ 106.)

Defendants only argument against successor liability is that AJZN "failed to establish any underlying liability." (D.I. 38 at 19; D.I. 41 at 10.)

At this stage of the pleadings, AJZN only needs to demonstrate a "showing of a certain set of facts," that "a theory exists upon which [AJZN] may be able to hold defendants liable . . . ." *Corp. Prop. Assocs. 8, L.P.*, 1994 WL 148269, at *5. AJZN alleges Aerielle, controlled by GALIC and Yu, (D.I. 36 at ¶ 14) transferred its assets to AAC, also controlled by Yu (*Id.* at ¶ 25), which then transferred its assets to AIPH, controlled by GALIC. (*Id.* at ¶¶ 90, 103-104.) These allegations in Count 11 are sufficient to assert successor liability against AAC and AIPH.

## IV. Conclusion

For the reasons contained herein defendants' motion is granted as to Counts 1, 2, 3, 4, 5, 7, and 10 (in part), and denied as to Counts 6, 8, 9, 10 (in part), and 11.

Dated: January **26**, 2015

UNITED STATES DISTRICT COURT